Wendell W. Anderson v. Commissioner.
Wendell W. Anderson v. Commissioner
Docket No. 3668.
United States Tax Court
1945 Tax Ct. Memo LEXIS 324; 4 T.C.M. (CCH) 100; T.C.M. (RIA) 45037; January 25, 1945
Arthur L. Evely, Esq., 1000 Penobscot Bldg., Detroit, Mich., for the petitioner. Philip M. Clark, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: The petitioner assails deficiencies in income tax for the years 1938 to 1941 as follows: Year
Deficiency
1938
$ 2,092.12
1939
21,396.20
1940
21,225.07
1941
15,925.36
*325 The question in issue is whether the petitioner is liable to income tax for the taxable years in question upon income of two trusts which he created on June 9, 1936, for the benefit of his wife, the income from which was currently distributable and was actually paid over to the wife during the taxable years and reported for taxation by her. Findings of Fact 1. The petitioner is a resident of Grosse Pointe Farms, Michigan. He filed his income tax returns for the years here involved with the collector of internal revenue for the district of Michigan, at Detroit. 2. On June 9, 1936, petitioner executed eight indentures of trust. Two of these were for the benefit of his then wife, Suzanne McFeely Anderson, and two for the benefit of each of their three children. The New York Trust Co., of New York City, was designated as trustee of one of the trusts for the wife and one for each of the three children, and the Bankers Trust Co., of New York City, was trustee of similar trusts for the same beneficiaries. All of the children were under the age of 21 years during the taxable years. 3. In all material respects the two trust indentures for the benefit of the wife are identical. Both *326 contain the following material provisions: "FIRST: The Trustee shall receive, hold, manage, sell, invest and reinvest such property and securities and every part thereof, and all property as shall from time to time constitute this trust fund, in the manner hereinafter specified, shall collect the income thereof, and after deducting the commissions of the Trustee as hereinafter provided, and such expenses in connection with the administration of the trust as are properly payable from income, shall pay over the remainder of the income in quarterly installments of equal amount, or as nearly equal as possible, to Suzanne McFeely Anderson, wife of the Donor, for and during the term of her natural life. Upon the death of said Suzanne McFeely Anderson the Trustee shall divide the principal and any accumulated and undistributed income of the trust fund into as many equal parts or shares as there shall be children of the Donor and said Suzanne McFeeley Anderson then living and issue then living of any such deceased child or children, one share for each such child and one share for the issue collectively of each such deceased child. The Trustee shall hold, manage and dispose of such shares *327 and the income therefrom as hereinafter provided. * * * * *
"SECOND: During the lifetime of the Donor the Trustee shall follow the written directions of the Donor in respect to sales, exchanges, investments and reinvestments of the securities and property at any time held in the trust fund, regardless of whether or not such investments or reinvestments are of the character now or hereafter permitted by law or the decisions of the Courts as proper investments for trust funds, and no sales, exchanges, investments or reinvestments shall be made except upon the written directions of the Donor. The Donor specifically, but without limitation, reserves the right to direct the investment of the trust fund or any part thereof in the stock of a corporation organized, or to be organized for the purpose of acquiring, owning, selling, holding and operating real property wherever situated. "The Trustee shall not be liable or responsible to any person whomsoever for any loss or depreciation to the trust estate by reason of following the written directions of the Donor in respect to sales, exchanges, investments and reinvestments of the trust fund and shall be under no obligation to make *328 recommendations to the Donor in respect to sales, exchanges, investments or reinvestments of the trust fund. * * * * *
"No purchaser upon a sale by the Trustee shall be bound to see to the application of the purchase money arising therefrom or to inquire into the validity, expediency or propriety of any such sale. "The foregoing provisions shall apply to the income accumulated hereunder as well as to the principal of the trust fund as it may be constituted from time to time. "THIRD: The Trustee is authorized and empowered to vote in person or by proxy upon all stocks or other securities held by it; * * * provided, however, that none of the powers and discretions hereinabove by this paragraph numbered THIRD conferred upon the Trustee shall be exercised during the life of the Donor, except in accordance with the written directions or with the approval of the Donor or other person, firm or corporation at that time in control and authority by virtue of the provisions of paragraph numbered SECOND hereof in respect to sales, exchanges, investments and reinvestments of the securities and property constituting the trust fund, and the Trustee shall follow such written directions *329 or approval in respect to the exercise of any such powers and discretions without liability or responsibility to any person whomsoever for any loss or depreciation to the trust fund arising by reason of following such directions or approval. * * * * *
"TWELFTH: The Trustee at any time acting hereunder may resign by mailing or delivering to the Donor its resignation in writing but any such resignation shall not be effective prior to thirty days from the date of mailing or delivery thereof unless waived by the Donor and the Trustee. In the event of any such resignation the Donor reserves the right to appoint a successor Trustee by instrument in writing duly acknowledged and delivered to such successor Trustee. In the event of any such resignation the approval of the accounts of the Trustee by the Donor shall operate as a sufficient acquittance and discharge to the Trustee for its acts and transactions in the administration of the trust and no other or further accounting shall be required. * * * * *
"FIFTEENTH: The Donor declares that the trusts herein created constitute a gift in praesenti, absolute and irrevocable, and that this agreement and the trusts herein created *330 are not subject to alteration, amendment, modification or revocation in any manner whatsoever." 4. The provisions contained in the several trusts for the benefit of the children, respectively, contain provisions for accumulation of the income, and in this respect differ as to disposition of income annually from the trusts for the benefit of the wife. Aside, however, from paragraph FIRST, all of the pertinent provisions above set forth, contained in the trusts for the benefit of the wife, are likewise set forth in identical terms in each of the trusts for the benefit of the children. 5. Petitioner and Suzanne McFeely Anderson were divorced in December, 1942. Neither of the above described trusts was affected by the divorce proceeding. A property settlement apart from the trusts was made. After divorce the trusts for the wife's benefit continued as before. 6. The net income of the two trusts for the petitioner's wife distributed to her during the taxable years was used by her in making investments for her own account, for the payment of personal expenses, and for making of gifts, without any control thereof by the petitioner. None of the income was used for household expenses or *331 for the children. The petitioner was amply able to pay all expenses of the household and of the children and actually did pay them. 7. The amounts of income paid over by the trustees to the wife in the taxable years herein involved, as shown in her individual tax returns for those years, were as follows: By Bankers
By New York
Year
Trust Co.
Trust Co.
1938
$ 2,700.00
$ 2,700.00
1939
15,714.40
15,717.50
1940
18,806.96
18,355.00
1941
10,880.00
11,300.00
8. The original corpus of each of the two trusts created for the benefit of the petitioner's wife and of each of the six trusts for the benefit of his children consisted of 900 shares of Class C common no par value stock of the Bundy Tubing Co., a Michigan corporation. At the time of the execution of the trust agreements, June 9, 1936, the capital stock of the Bundy Tubing Co. consisted of 6,350 shares of Class A cumulative preferred stock, 35,000 shares of Class B cumulative preferred stock, and 20,000 shares Class C common no par value stock. The Class C common no par value stock was the only stock possessing voting privileges. In June, 1937, a recapitalization of the Bundy Tubing Co. was authorized *332 and was effected in August of that year. Each share of Class C common no par value stock was exchanged for 20 shares common no par value stock, making a total of 400,000 shares of common no par value stock. The Class A cumulative preferred stock was not affected by the recapitalization. The Class B cumulative preferred stock was changed by making provision for the conversion of each share of that stock into 8 shares of the common no par value stock. Immediately following the recapitalization the holders of the 35,000 shares of Class B cumulative preferred stock exchanged such shares for 280,000 shares of the common no par value stock. Thereafter and during the years here in question the capital stock of the Bundy Tubing Co. consisted of 680,000 shares of the common no par value stock and 6,350 shares of the Class A cumulative preferred stock. The common no par value stock possessed all the voting privileges. 9. During the years here in question the petitioner was the president and treasurer and a director of Bundy Tubing Co. The stock of the company had been acquired by the petitioner and his brother-in-law, Arthur Gardner, and A. F. Knoblock, in 1929. At that time petitioner and *333 Arthur Gardner were engaged in the investment banking business under the name of Anderson & Gardner, Inc. Petitioner and Gardner decided to retain the Bundy Tubing Co. and took over its management in 1931. Both have been officers and directors of the company ever since. Petitioner and Gardner worked closely together in the management of the company from the beginning. 10. During the years here in question the petitioner, his brother-in-law, Arthur Gardner, and other relatives were the owners of substantial blocks of the common no par value stock of the Bundy Tubing Co. Shares of this stock were also owned by Juniper Investment Corporation, a corporation in which 47 percent of the stock was owned by the petitioner, a like amount by his sister, and the balance by his father and mother. The common no par value stock of Bundy Tubing Co. outstanding during the years 1938 to 1941 is shown by the following table: Number of Shares
Name
6/30/38
6/30/39
6/30/40
6/30/41
Wendell W. Anderson
179,624
187,824
186,874
186,724
Arthur Gardner
181,424
181,424
181,424
181,424
John W. Anderson
29,240
29,240
25,240
25,240
Eddy & Co. (Nominee for Bankers Trust Co.)
72,000
72,000
72,000
72,000
Merrick & Co. (Nominee for New York Trust Co.)
72,000
72,000
72,000
72,000
Juniper Investment Co.
None
7,000
23,000
21,800
Suzanne M. Anderson
250
250
250
250
*334 11. Eddy & Co. and Merrick & Co. are nominees, respectively, for Bankers Trust Co. and New York Trust Co. The shares of stock above listed as held by them represent respectively the corpus of the four trusts for which each bank was trustee. John W. Anderson, petitioner's father, took no active part in business affairs. Petitioner handled all of his affairs under a power of attorney. 12. There was no change in the corpus of either of the wife's trusts from the time of their creation to the present time except that in 1937 each share of Class C common no par value stock was exchanged for 20 shares of like stock so that after the exchange the corpus of each trust consisted of 18,000 shares of the common no par value stock of the company instead of 900 shares as formerly. 13. None of the powers reserved to petitioner in paragraphs Second and Third of the trust agreements establishing the two trusts here in question was ever exercised by him at any time. He never directed the trustees to perform or to refrain from performing any act. Petitioner did not individually vote the stock of Bundy Tubing Co. held by the two trusts and proxies were never solicited. When proxies were given *335 by any of the stockholders they were given to the petitioner and two other officials of the company. 14. The purpose of petitioner in reserving the powers contained in paragraphs Second and Third of the trust agreements was his desire to be in a position to advise the trustees in making investments. Petitioner had for a number of years been an employee of Harris, Forbes & Co., an investment banking institution. After leaving that concern he, with his brother, was engaged in the investment banking business in Detroit for many years. He was qualified to advise the trustees in the making of investments. Opinion In his determination of the deficiencies in this proceeding the respondent has included in the petitioner's taxable income the income of the two trusts which he created on June 9, 1936, for the benefit of his wife, Suzanne McFeely Anderson, but not the income of the six trusts for the benefit of the children, although possessing the same powers of dominion and control over those trusts as over the wife's trusts. In the deficiency notice the respondent states that his reason for doing so is: * * * that the income from the Suzanne McFeely Anderson Trusts is taxable to you *336 under the provisions of Section 22 (a) and 167 of the Revenue Act of 1938 and the Interal Revenue Code. On brief he also relies upon section 166. The respondent's first contention is that the petitioner is taxable upon the income of the two trusts created for the benefit of the wife under section 22(a). That section requires the inclusion in "gross income" of all "gains, profits, net income derived * * * from any source whatever." In , it was held that in certain cases section 22 (a) could be invoked to tax the grantor on the income of a trust of which he retains substantial ownership of the trust assets. The facts in that case were that in 1934 Clifford, the taxpayer, declared that he held certain securities in trust for the "exclusive benefit" of his wife. The trust was for a term of five years except that it would terminate earlier upon the death of either the grantor or his wife. On the termination of the trust the entire corpus was to revert to the grantor while all "accrued or undistributed net income" and "any proceeds from the investment of such net income" was to be treated as property owned absolutely by the wife. The *337 grantor retained the right to say how much of the income, if any, should be currently distributed to his wife. He also retained broad powers in respect of the property which was to constitute the corpus of the trust, such as the right to hold any of it in the names of "other persons or in my own name as an individual" except as otherwise provided. Upon the facts which obtained in the case the Supreme Court held that "the bundle of rights" retained by the grantor "as a result of the terms of the trust and the intimacy of the familial relationship" resulted in the retention of "the substance of full enjoyment of all the rights which previously he had in the property." The court determined therefore, as the Board of Tax Appeals had determined in the first instance, that the income of the trust was taxable to the grantor. In that case the court stated: That issue is whether the grantor after the trust has been established may still be treated, under this statutory scheme as the owner of the corpus. * * * In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and *338 all the circumstances attendant on its creation and operation. * * * In the instant proceeding the respondent contends that the petitioner as grantor of the two trusts involved herein retained such powers as makes him the substantial owner of the trust assets. He points out that each trust instrument contains the reservation of power in the petitioner to direct the investment policy of the corporate trustees; that by reason of such reservation of power he could vote the stock of the Bundy Tubing Co. forming the corpora of the trusts and therefore control the affairs of that company; also that such reservation of power in the petitioner gave him complete dominion over the trusts and that "there is nothing to prevent petitioner from at any time requiring the trusts to take his unsecured notes in exchange and substitution for the Bundy Tubing Company stock." He further submits that the powers reserved to the grantor are "so sweeping in character as to make the trustee nothing but an agent of the donor, required to sell, exchange or reinvest the securities comprising the corpus at any time for whatever the donor may order the trustee to accept in lieu thereof." The respondent makes *339 no contention that the trusts were not validly created or that the legal title to the trust assets was not in the corporate trustees. If his argument is meritorious that the corporate trustees are mere agents of the grantor then the grantor in directing the investment policy of the trusts was bound to use good faith in his exercise of the direction of the investment policy. See ; . Cf. . Where a grantor retains powers of management for the benefit of the beneficiary the grantor is not liable to income tax upon the income of the trust by reason of such retained power. , promulgated January 16, 1945. The rule is different, however, where the power is reserved for the benefit of the grantor. See . Cf. ; affd. (C.C.A., 6th Cir.), . It has many times been held that a power to direct investments retained by the grantor of a trust does not constitute such *340 rights of dominion and control as the court in , held to be a retention of substantial ownership of trust funds. See ; ; ; ; affd. (C.C.A., 2nd Cir.), ; From a careful consideration of all of the evidence in this record we are satisfied that the petitioner as grantor desired to retain the direction of the investment policy of the trusts solely for the benefit of the beneficiary. He had for a long period been an employee of Harris, Forbes & Co., a prominent investment banking house, and for a number of years prior to the creation of the trusts involved herein had been engaged with his brother-in-law, Gardner, in the investment banking business in Detroit. By training and experience he was qualified to direct the investments of the trusts. Although the petitioner had this power to direct the investments of the trusts he never exercised such power during *341 any of the taxable years here in question. It is also in evidence that the petitioner never requested proxies upon the shares of stock comprising the corpus of the trusts. He was not interested in the right to vote such stock for the purpose of retaining control of the Bundy Tubing Co. He, with his brother-in-law, had control of the company and they had always worked harmoniously together. The respondent makes the further contention that the petitioner is taxable upon the income of the trusts under section 166. That section provides that where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor. As we understand the respondent's argument it is that by reason of the petitioner's control of the investment policy of the trusts he could require the trustees to sell the trust assets at any price that he might name or that he could cause the incorporation of a real *342 estate company and require the trustees to exchange shares of stock of the Bundy Tubing Co. for shares of stock of the real estate company which might have only a nominal value, if any. We think that this argument of the respondent is farfetched and without merit. By the opinion of the Supreme Court in Helvering v. Clifford we are admonished to consider the circumstances of the creation and operation of a trust in applying the principle of that case. There is not the slightest evidence in this case that the petitioner retained power of control of the investment policy of the trusts with any ulterior motive in mind. Furthermore, as we have above stated, the grantor having the right to direct the trustees with regard to investments was required to act as a trustee would be required to act under similar circumstances. He was not absolved from liability for acting in the best interests of the beneficiary. The respondent makes the further argument that section 167 may also be invoked for the taxation of the grantor. That section authorizes taxation to the grantor of a trust where the income of the trust may be used for the benefit of the grantor. The respondent argues that since after *343 the creation of the two trusts the wife used more of her own funds for personal expenses, for clothes, etc., than before the trusts were created the trust income was used for the benefit of the grantor who, of course, was responsible for the support of his wife. This argument also appears to us to be without merit. The evidence indicates that the wife owned considerable property in her own right prior to the creation of the trusts; also that she received the distributable income of the trusts during the taxable years and used it for her own benefit in any manner that she saw fit. It was not used for household expenses nor for the expenses of the children. The grantor did not direct the investment or expenditures of such income. In our opinion the petitioner was not taxable upon any of the income of the two trusts involved herein for any of the taxable years. Decision will be entered under Rule 50.